**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ZARDAR ARIF, *et al.*,

          Plaintiffs,

    v.

MARCO RUBIO, in his official capacity as
Secretary of State, *et al.*,

          Defendants.

Case No. 24 C 11971

Honorable Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiffs Zardar Arif, a United States citizen, and his mother, Saadia Arif, a lawful United States permanent resident and Canadian citizen, filed an action on behalf of Arif Mumtaz, Mr. Arif's father and Ms. Arif's spouse. The claim is against the United States Secretary of State, the United States Secretary of the Department of Homeland Security (DHS), and the Consul General of the United States Consulate General in Montreal.[1] Plaintiffs allege unreasonable delay by the government in the processing of Mr. Mumtaz's visa application. Plaintiffs seek relief under the Mandamus Act, Title 28, United States Code, Section 1361 and the Administrative Procedure Act (APA) to compel the government to adjudicate the application. Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Defendants' motion to dismiss [15][16] is granted for failure to state a claim.

### Statement of Facts

As Defendants raise this motion under Rule 12(b)(6), the Court takes the facts from the allegations detailed in the Complaint, "documents attached to the complaint, documents that are

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Secretary of State Marco Rubio and Secretary of the Department of Homeland Security Kristi Noem for the previously named defendants.

critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Plaintiff Arif filed two petitions with the United States Citizenship and Immigration Services (USCIS) on behalf of his parents, Ms. Arif and Mr. Mumtaz, seeking family-sponsored immigration visas on January 22, 2022. USCIS, an agency within DHS, began the process of reviewing the applications. This included confirming that there is a familial relationship between the United States citizen and beneficiary, filing specific documents, and paying fees. Once completed, the State Department's Visa Center scheduled Ms. Arif and Mr. Mumtaz for a visa interview at the United States Consulate General in Montreal on September 22, 2023.

At the September interview, the visa applications were refused under Section 221(g) of the Immigration and Nationality Act and Title 8, United States Code, Section 1201(g) because the parents failed to demonstrate their eligibility for the visas. The consular officer determined that "additional security screening was required." [16-1] at ¶ 9. After the interview, the consular officer gave the parents a visa refusal document, which said "this decision constitutes a denial of a visa." [1] at Exhibit 3b. The document also stated that "[a]dditional processing is required. We will contact you when this is complete." *Id*. Mr. Mumtaz's document further requested that he complete and submit Form DS-5535, Supplement Questions for Visa Applicants. *Id*. The document said he must present his passport "when we let you know." *Id*. Mr. Mumtaz submitted Form DS-5535 the next day. [1] at Exhibit 4; [16-1] at ¶ 10.

On October 30, 2023, the United States Consulate in Montreal requested more information by email, inviting Mr. Mumtaz for a follow-up interview on November 6, 2023, "to continue processing" his visa application. [1] at Exhibit 5; [16-1] at ¶ 10. Mr. Mumtaz attended the interview without a resolution on his application.

Plaintiffs inquired about Mr. Mumtaz's status several times by email and through their congressional representative. They received automated replies. [1] at Exhibits 7, 7b, 7d, 7e. Having no satisfactory response, Plaintiffs filed this action in November 2024.

## Legal Standard

Defendants move to dismiss the Complaint based on both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b) (1) motion tests whether the Court has subject-matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When a defendant challenges subject matter jurisdiction on mootness grounds, the defendant bears the burden of establishing that a court no longer has jurisdiction. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (*quoting Iqbal*, 556 U.S. at 678).

When deciding a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the non-

moving party. *See Ctr. for Dermatology & Skin Cancer*, 770 F.3d at 588; *Heredia v. Cap. Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Because Plaintiffs filed *pro se*, this Court will construe the Complaint more liberally than those prepared with assistance of counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**Discussion**

Plaintiffs bring this action under: (1) the APA, Title 5, United States Code, Sections 555(b) and 706(1), which require agencies to conclude matters "within a reasonable time" and grant courts the ability to "compel agency action unlawfully withheld or unreasonably delayed;" and (2) the Mandamus Act, Title 28, United States Code, Section 1361. Defendants put forward four primary arguments in their motion to dismiss [15][16]. First, Defendants argue that Plaintiffs did not sufficiently state a claim against the non-State Department Defendants. Second, Defendants contend that Plaintiffs' claims are moot. Third, Defendants maintain that the doctrine of consular non-reviewability bars this Court from reviewing Plaintiffs' claims. Finally, Defendants argue that Plaintiffs failed to state claims under the Due Process Clause of the Fifth Amendment, as a writ of mandamus, or under the APA.

## I.     Non-State Department Defendants

Defendants argue that Plaintiffs failed to state a claim against the Secretary of the Department of Homeland Security (DHS), and therefore, the Court should dismiss DHS from this case.[2] Specifically, Defendants argue that DHS fulfilled its duty to the Plaintiffs when the initial

---

[2] Both Defendants, in their Motion to Dismiss [15][16], and Plaintiffs, in their Brief in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss [19], address dismissal of DHS and USCIS. However, as USCIS is not a party to this case, the Court need not address them.

visa petition was approved and referred to the United States Consulate in Montreal. Defendants further argue that, because Plaintiffs did not allege any facts regarding a failure to act by the Secretary of DHS, the Complaint is deficient. Plaintiffs reply that DHS should not be dismissed because DHS retains "legal responsibility for processing delays." [19] at 17.

A court may dismiss a defendant when the plaintiff fails to include allegations about the defendant's role in the adjudication of the immigration application. *See Alqrinawi v. Noem*, 2025 WL 1222651, at *1 (N.D. Ill. Apr. 28, 2025); *Kulla v. Mayorkas*, 2024 WL 4188017, at *2 (N.D. Ill. Sept. 13, 2024); *Hasbani v. Noem*, 2025 WL 1103817, at *2 (N.D. Ill. Apr. 14, 2025). In *Alqrinawi*, a court in this district dismissed the Secretary of State because the plaintiff's immigration application was being processed by USCIS; the State Department had no role in the adjudication at that point. 2025 WL 1222651, at *1. While the plaintiff's complaint acknowledged the Secretary of State's authority over consular officers, that authority was not at issue in that case because the State Department had not yet touched the application. *Id*. Additionally, the plaintiff did not provide any factual allegations about the State Department's liability for the delay, so the court dismissed the Secretary of State. *Id*. Similarly, in *Kulla*, the plaintiff did not allege that certain defendants failed to fulfill a legal duty to act regarding the adjudication of an asylum application. 2024 WL 4188017, at *2. Because the plaintiff's complaint had only specified the role of DHS and USCIS in the adjudication of the visa application, the district court dismissed the other Defendants, namely the Director of the Federal Bureau of Investigation and the Secretary of State. *Id*; *see also Hasbani*, 2025 WL 1103817, at *2 (same).

Outside of describing the approval of the visa petition and the general responsibilities of the Secretary of DHS, the Complaint deals solely with the State Department Defendants. Plaintiffs allege that the Secretary of DHS is responsible for the "administration and enforcement of federal

immigration laws" ([1] at 2), like the plaintiff's acknowledgement of the Secretary of State's role in overseeing consular officers in *Alqrinawi*. But, again like in *Alqrinawi*, the Complaint provides no factual allegations regarding the Secretary of DHS's role in the adjudication of the visa application after USCIS confirmed that a familial relationship existed. Instead, the Complaint suggests that the Secretary of DHS completed his legal duty after the application was sent to the Visa Center. [1] at 3. While the Complaint notes that the Secretary of State oversees the "adjudication of visa applications processed by the U.S. Department of State and its consular offices," this is not the focus of the action. *Id*. at 2. The Complaint centers on interactions with the United States Consulate General of Montreal, including the interviews, the visa refusal, and inquiries with the consulate. *Id*. at 3. Absent such factual allegations against the Secretary of DHS, the Court cannot infer any liability and may dismiss the Secretary of DHS from this case, as did the courts in *Kulla* and *Alqrinawi* in dismissing other named defendants. In comparison, the Complaint contains allegations against the Secretary of State and the Consulate General, like the allegations against the DHS and USCIS in *Kulla*, so the Court may infer liability against them.

Even if the Court could find that the Complaint alleged wrongdoing on the part of the Secretary of DHS, this Court would still dismiss DHS from this case for lack of standing. To establish Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Other courts in this district found that plaintiffs seeking adjudication of their visa application, after USCIS forwarded their application to the United States Consulate, lacked standing against USCIS and DHS because those defendants already completed their role in the visa application process. *See Salem v. Noem*, 2025 WL 1567864, at *4 (N.D. Ill. June 3, 2025);

*Shamim v. Rubio*, 2025 WL 1399166, at *2 (N.D. Ill. May 14, 2025).  Since USCIS and DHS cannot adjudicate the visa applications, they were unable to redress the plaintiffs' alleged injuries. The same is true in this case.  The Court cannot compel the Secretary of DHS to adjudicate Mr. Mumtaz's visa application because the adjudication is now in the hands of the Department of State and the Consulate General.  Accordingly, Defendant Secretary of DHS is dismissed.

## II.    Mootness/Standing for State Department Defendants

Second, Defendants argue that Plaintiffs' claim is moot because a consular officer already refused Mr. Mumtaz's visa application in September 2023 after the initial interview.  Because an officer already refused a visa to Mr. Mumtaz, Defendants contend that this Court cannot provide the relief that Plaintiffs seek, namely a final decision on the application.  Plaintiffs counter that the consular officer did not render a final decision on the application, as evidenced by the placement into administrative processing.  The Court finds that Defendants incorrectly characterized this issue as a question of mootness when it is a question of standing, and that Plaintiffs have standing to bring their claim against the State Department Defendants.

### a.  Standing, Not Mootness

While Plaintiffs claim that they have standing ([19] at 6), Defendants insist that the standing issue is one of mootness. [20] at 5. Defendants argue that, because an adjudication already occurred, a court may not compel the relief the plaintiff requests (the adjudication), and thus the case is moot.  The difference between standing and mootness matters because the plaintiff bears the burden of demonstrating standing at the commencement of the suit, while the defendant bears the burden of "establish[ing] that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. at 719–20.

Article III courts can hear only "Cases" and "Controversies." US. Const. art. III, § 2. A case becomes moot when a live controversy no longer exists, and the court cannot provide effective relief. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Where "an intervening circumstance deprives the plaintiff" of a personal interest during the litigation, the court must dismiss the action as moot. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). The Seventh Circuit noted that standing and mootness are interrelated: "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Taylor v. McCament*, 875 F.3d 849, 854 (7th Cir. 2017) (cleaned up).

Where the basis for dismissing a case for lack of subject matter jurisdiction is an event that occurred before the commencement of the suit, the relevant legal question is one of standing, not mootness. In *Ebrahimi v. Blinken*, the plaintiff initiated the action about one month after the refusal of the visa application. 732 F. Supp. 3d 894, 902 (N.D. Ill. May 3, 2024). The court reclassified the mootness argument into one of standing because the litigation started after the visa refusal, not before. *Id.* The parties were not debating whether there was "an intervening circumstance depriv[ing] the court of federal subject-matter jurisdiction," but whether an actual injury that could be redressed took place. *Id.* (cleaned up). Similarly, in *Patel v. Sanders*, the district court reframed the question of mootness as one of standing because the consular officer refused the visa application before the filing of the lawsuit and the government took no action on the application since the filing of that suit. 2025 WL 1039505, at *4 (N.D. Ill. Apr. 7, 2025); *see also Salem*, 2025 WL 1567864, at *5 (collecting cases).

Like the plaintiffs in *Ebrahimi*, *Patel*, and *Salem*, Plaintiffs filed this suit after the Section 221(g) refusal, in November 2024. Defendants and Plaintiffs disagree about whether the Section 221(g) refusal at the September 2023 initial interview constituted an adjudication, not whether

there was an intervening circumstance after commencement of this action that removed the ability of this Court to grant relief. At issue in this case, then, is whether Plaintiffs suffered the alleged injury that the Court can remedy with a favorable decision—a lack of a complete adjudication of Mr. Mumtaz's visa application.

Defendants rely on *Sabo v. Mayorkas* to argue that the Court should analyze this case through the lens of mootness, not standing, but *Sabo* is not analogous to this case. 2024 WL 2863373 (N.D. Ill. June 5, 2024). In *Sabo*, the district court dismissed the plaintiff's unreasonable delay claim because the claim was moot. *Id.* at *6. The plaintiff requested the court to compel USCIS to adjudicate her I-751 Petition to Remove Conditions on Residence and her I-130 petitions for her two sons. *Id.* at *1. The court held that her claim was moot because the government's actions on those petitions after the action commenced removed the possibility of her ability to sponsor the I-130 petitions. *Id.* at **4–5. After the plaintiff initiated her lawsuit, USCIS issued requests for evidence for the I-130 petitions and denied the I-751 petition. *Id.* The requests for evidence mooted the plaintiff's claim because they demonstrated that USCIS started to adjudicate her application, so the court did not need to step in to compel its adjudication. *Id.* at *5. Denying the I-751 petition meant that the plaintiff could not sponsor I-130 petitions, so the denial also mooted her claim. *Id.* Because USCIS' actions "fundamentally changed" the circumstances of the case after it had started, the court could not grant effective relief. *Id.*

*Sabo* demonstrates that intervening circumstances render a case moot, but it is not on point here. First, the plaintiff in *Sabo* is at a different stage of the immigration process, waiting for USCIS to approve the I-130 petitions, whereas USCIS confirmed Mr. Mumtaz's familial relationship and sent his application to the State Department for further processing. Second, in *Sabo*, the court found that the government actions after the filing of the case rendered the case

moot, so the court analyzed subject matter jurisdiction under mootness, not standing. Here, unlike in *Sabo*, the parties focus on the meaning of the Section 221(g) refusal that occurred before the commencement of the suit. Unlike in *Sabo*, the government did not issue any requests for evidence to Mr. Mumtaz after the lawsuit began. The government also did not change Mr. Mumtaz's immigration status or his visa status. Thus, the appropriate analysis is one of standing, not mootness.

### b. State Department Standing

Defendants also argue that Plaintiffs' claim is moot because Mr. Mumtaz already received a decision on his application through the consular officer's Section 221(g) refusal, and that Plaintiffs seek a reconsideration of that decision. Defendants cite a wide range of non-binding district court opinions that held that a refusal under Section 221(g), like in Mr. Mumtaz's application, constituted a final adjudication and mooted the plaintiff's claims. In response, Plaintiffs offer other, non-binding authorities in support of the opposite conclusion, that placement into administrative processing was not a final decision, so the Court may still compel an adjudication. Reframing the mootness issue as one of standing, the Court turns to whether the Section 221(g) refusal at the consular interview constituted a decision that precludes a plaintiff from having standing for an unreasonable delay claim.

The Seventh Circuit has yet to speak on this issue, and courts in this district disagree. The courts that found standing did not view the visa refusal in isolation but also considered the government's communications during and following the Section 221(g) refusal. When the government's communications suggest that an application is still under review, then the plaintiff has standing. *See Ebrahimi*, 732 F. Supp. 3d at 900; *Zadeh v. Blinken*, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024). In *Ebrahimi*, the consular officer refused the visa application under

Section 221(g), after the interview, told the petitioner to submit Form DS-5535, and said that his application could be overcome; later, the visa application status on the State Department website read: "You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed." 732 F. Supp. 3d at 900. The district court emphasized that the use of the word "will" means that the adjudication was not complete. *Id.* at 904 (*citing Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *5 (D.D.C. Jan. 30, 2024)). The court in *Ebrahimi* characterized the visa refusal as an ongoing adjudication, so the plaintiff had standing. *Id.* at 904–05. In *Zadeh*, the court also found that the adjudication was incomplete: the document refusing the application did not indicate finality of the visa application process, as it said, "this refusal may be overcome once the missing documentation is submitted and/or administrative processing is completed." 2024 WL 2708324, at *4. The document also noted that the applicant would "be contacted once the processing is complete." *Id.* Therefore, the language on the visa application status promised another adjudication. *Id.*

When courts did not find standing, there were no communications suggesting a further adjudication, so the refusal was the final adjudication. *Nasir v. United States Dep't of State*, 749 F. Supp. 3d 938, 941 (N.D. Ill. Sept. 17, 2024); *Shamim*, 2025 WL 1399166, at *3. In *Nasir*, the consular officer denied the visa application under Section 221(g) after the consular interview, required additional security screening, and requested the applicant to fill out Form DS-5535, but made no additional promise of another adjudication. 749 F. Supp. 3d at 941–42. Because consular officers cannot place an application on hold, but can only either issue or refuse a visa, the refusal represented an adjudication. *Id.* at 942. The court held that, since an adjudication had occurred, the plaintiff lacked standing. *Id.* at 943. Similarly, in *Shamim*, the court stated that a Section 221(g)

11

refusal constituted a final adjudication because, even though a consular officer may reconsider the refusal, there was no statutory requirement to complete administrative processing. 2025 WL 1399166, at *3 (*citing Yaghoubnezhad v. Stuft*, 734 F. Supp. 3d 87, 101 (D.D.C. May 9, 2024)).

The majority of courts in this district follow *Ebrahimi* rather than *Nasir* because the government's communications clearly suggest further adjudication down the line. For example, the court in *Patel* found standing because the government said administrative processing was ongoing, the government promised to let the applicant know when processing was complete, and the visa application status said the applicant would "receive another adjudication," like in *Ebrahimi*. 2025 WL 1039505, *5. Likewise, the court in *Salem* found standing because the embassy requested additional information from the applicant, such as a DNA test and age-verification documentation, and the visa status said the applicant would receive another adjudication upon completion of administrative processing. 2025 WL 1567864, at *6.

This Court finds this case more analogous to *Ebrahimi* and *Zadeh* than to *Nasir* or *Shamim*. Unlike in *Nasir*, the communications from the United States Consulate suggest that Mr. Mumtaz will receive another adjudication. Beginning with the paperwork following the September 2023 interview: Mr. Mumtaz's visa refusal document, like that in *Zadeh*, said that "[a]dditional processing is required. We will contact you when this is complete." [1] at Exhibit 3b. The consulate requested more information from Mr. Mumtaz through Form DS-5535. Unlike in *Zadeh* and *Ebrahimi*, the document does not contain language mentioning that Mr. Mumtaz could overcome the refusal once additional processing is complete. But, like the document in *Zadeh*, the document still does not indicate finality, as it also requests him to present his passport "when we let you know." *Id*. None of the language on the refusal documentation appeared in *Nasir* or *Shamim*'s analysis. The phrases "we will contact you when this is complete" and "when we let

you know" on the worksheet suggest that the Consulate plans to act on Mr. Mumtaz's application in the future and that review of his application is incomplete. And, like the request for the age-verification documentation in *Salem*, the request to see Mr. Mumtaz's passport on the refusal shows that the consulate needed more information before they could adjudicate his application.

A consulate officer later emailed Mr. Mumtaz to coordinate a follow-up interview in November. In scheduling that interview, the consular officer said they needed more information "to continue processing [Mr. Mumtaz's] U.S. immigrant visa application." [1] at Exhibit 5. "To continue processing" implies not a reconsideration of a denied application, but the continued review of the application. The same applies for requesting a follow-up interview.

The Court also takes judicial notice of Mr. Mumtaz's status on the Consular Electronic Application Center (CEAC), referenced by the Plaintiffs ([1] at Exhibit 1) and reflecting information important to the standing analysis. *See* Fed. R. Evid. 201; *see Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites."); *see also Jama v. Wahid,* 2025 WL 346811, at *6 (E.D. Wis. Jan. 30, 2025) (conducting a search on applicant's visa status to determine standing); *Karbasian v. U.S. Dep't of State*, 2025 WL 821597, at **2, 11 (S.D. Ill. Mar. 14, 2025) (same). Mr. Mumtaz's case number is MTL2022858007. Performing a search using Mr. Mumtaz's case number on CEAC, the visa application status says:

> "A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed."

Search results for "MTL2022858007," U.S. Dep't of State, Consular Elec. Application Ctr., Visa Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited July 7, 2025). The sentence in Mr. Mumtaz's application status, "You will receive another adjudication once such processing is complete," matches the language that the courts in *Ebrahimi*, *Patel*, and *Salem* found to demonstrate assurances of further adjudication. As the court in *Ebrahimi* noted, the "use of will in this communication all but guarantees the applicant another adjudication once administrative processing is complete." 732 F. Supp. 3d at 904 (cleaned up).

Accepting Plaintiffs' allegations as true and drawing inferences in their favor, reviewing this information in totality suggests that the government has not completed adjudication of Mr. Mumtaz's application. As the government still needs to complete the review of the application, Plaintiffs can file suit for unreasonable delay. Plaintiffs sufficiently established that they have standing against the State Department defendants.

### III.   Consular Nonreviewability

The Seventh Circuit treats consular nonreviewability "as a matter of the case's merits." *Matushkina v. Nielsen*, 877 F.3d 289, 294 n.2 (7th Cir. 2017). Courts disagree about whether consular non-reviewability applies after a Section 221(g) refusal for administrative processing. This Court finds that it does not.

Defendants argue that this Court should dismiss this case under Rule 12(b)(6) because the doctrine of consular non-reviewability "bars judicial review of visa decisions made by consular officials abroad." *Yafai v. Pompeo*, 912 F.3d 1018, 1020–21 (7th Cir. 2019) (*quoting Matushkina*, 877 F.3d at 294). The judiciary should "not interfere with the visa issuing process." *See Amoakowaa v. Reno*, 94 F. Supp. 2d 903, 905 (N.D. Ill. Mar. 24, 2000) (*quoting Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978)). Defendants contend that it is undisputed that a

consular officer decided to withhold a visa, and that Plaintiffs ask for an expedited re-adjudication of that decision.

No statutory authority allows the judicial branch to review a consular official's denial of a visa. *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024). But, as Plaintiffs argue, where a consular officer's decision is not final, consular nonreviewability does not apply. *See Ebrahimi*, 732 F. Supp. 3d at 907 (consular nonreviewability does not apply where assurances of another adjudication follow a Section 221(g) refusal); *Patel*, 2025 WL 1039505, at *5 (holding that the challenge to the delay in processing, not the denial of a visa, rendered consular nonreviewability non-applicable); *Salem*, 2025 WL 1567864, at *6 (same).

The Court found in its analysis of standing that Mr. Mumtaz did not receive a complete adjudication of his visa application. Plaintiffs do not challenge the denial of Mr. Mumtaz's visa application, but the delay in its adjudication. Because Mr. Mumtaz awaits a final decision on his application, the Court finds that consular nonreviewability does not apply.

Defendants argue that the Seventh Circuit cases *Yafai*, *Matushkina*, and *Amoakowaa* stand for the proposition that the judiciary may not review a Section 221(g) refusal. But, as the court in *Ebrahimi* noted, none of those decisions dealt with the Section 221(g) refusal for administrative processing. 732 F. Supp. 3d at 907. The plaintiffs in those cases did not allege unreasonable delay in adjudicating their application, but challenged the denials or the basis for denial themselves. In *Yafai*, the consular officer denied a visa application for attempted smuggling, and the plaintiff challenged the officer's decision. 912 F.3d at 1019. In *Matushkina*, the plaintiff challenged the "inadmissibility determination that is the basis for the unfavorable visa decision," so that a consular officer could later grant her a visa. 877 F.3d at 295. The district court in *Amoakowaa* dismissed the case because the court could not review the denial of the visa application. 94 F. Supp. 2d at

905. These cases showcase the doctrine of consular nonreviewability as it applies to visa application decisions, but not its application to delays in adjudicating visa applications.

As noted above, Plaintiffs challenge not the denial, but an unreasonable delay of a visa application. Thus, the Court must determine the sufficiency of Plaintiffs' Due Process, Mandamus, and APA claims under 12(b)(6).

## IV. Failure to State a Claim

Defendants argue that Plaintiffs fail to state claims under the: (1) Due Process Clause of the Fifth Amendment; (2) Mandamus Act, Title 28, United States Code, Section 1361; and (3) APA. The Court agrees.

### a. Due Process

Plaintiffs argue that failure to adjudicate their claim violates due process. However, a "citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Dep't of State v. Muñoz*, 602 U.S. at 909. There is also no due process right for an expedited visa adjudication of one's husband or father. *See, e.g.*, *Nasir*, 749 F. Supp. 3d at 944; *Patel*, 2025 WL 1039505, at *9; *Jama*, 2025 WL 346811, at *12. This Court similarly does not find a liberty interest implicated here, and the due process claim is dismissed.

### b. Writ of Mandamus

Plaintiffs request a writ of mandamus to "expedite the administrative processing and immediately render a final decision" on Mr. Mumtaz's visa application. [1] at 5. The Court declines because "there is an available avenue for relief under the APA." *See Lubega v. Mayorkas*, 2024 WL 4206425, at *1 (N.D. Ill. Sept. 11, 2024).

In a mandamus action, Title 28, United States Code, Section 1361 grants district courts the power "to compel an officer or employee of the United States or any agency thereof to perform a

duty owed to the plaintiff." A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (cleaned up). For a court to grant a writ, the petitioner must demonstrate: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

The third element is determinative in this case, as another remedy is available. Where mandamus relief is duplicative of that under the APA, courts must dismiss the petition for writ of mandamus. *See, e.g.*, *Lubega*, 2024 WL 4206425, at *1; *Ebrahimi*, 732 F. Supp. 3d at 908; *Patel*, 2025 WL 1039505, at *6. Under the APA, courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). This allows the Court to order the State Department to adjudicate Mr. Mumtaz's application. Plaintiffs seek, by writ of mandamus, the same relief. *See Lubega*, 2024 WL 4206425, at *1 ("[T]he mandamus relief sought is duplicative of that available under the APA."); *Ebrahimi*, 732 F. Supp. 3d at 908 (same). In holding with other courts in this district, the mandamus claim is dismissed.

### c. APA Claim

While Defendants argue that the APA does not impose a duty on the State Department to re-adjudicate visas, the APA does require that the State Department adjudicate the visa application. Through the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Federal courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The court in *Patel* found that "consular officers have a nondiscretionary duty to conclude their adjudication of visa applications within a reasonable time." 2025 WL 1039505, at *6; *see*

*also Iddir v. I.N.S.*, 301 F.3d 492, 500 (7th Cir. 2002) (finding that the government-defendants had

a duty to adjudicate the applications within a reasonable period of time).  Plaintiffs assert the fact

that the visa application has yet to be adjudicated counts as unreasonable delay.  So, Plaintiffs can

pursue an APA claim.  However, courts have found that a delay between three to five years is not

unreasonable as a matter of law. *See Patel*, 2025 WL 1039505, at *8 (collecting cases).

Courts use the six-factor test from *Telecomms. Rsch. & Action Ctr.* ("*TRAC*") *v. F.C.C.*, 750

F.2d 70, 80 (D.C. Cir. 1984) to evaluate claims of unreasonable delay, considering:

> "(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2)
> where Congress has provided a timetable or other indication of the speed with which it
> expects the agency to proceed in the enabling statute, that statutory scheme may supply
> content for this rule of reason; (3) delays that might be reasonable in the sphere of economic
> regulation are less tolerable when human health and welfare are at stake; (4) the court
> should consider the effect of expediting delayed action on agency activities of a higher or
> competing priority; (5) the court should also take into account the nature and extent of the
> interests prejudiced by delay; and (6) the court need not find any impropriety lurking
> behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Id.* (cleaned up); *Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020)

(Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims

of agency delay that courts can apply to unanswered rulemaking petitions.").  Plaintiffs do not

state a plausible claim for relief under these factors.

### i. Factor One

The first factor, that the time the State Department takes to adjudicate claims must be

governed by a rule of reason, is the most important factor. *See Ebrahimi*, 732 F. Supp. 3d at 911.

Plaintiffs argue that a 17-month delay, the delay from Mr. Mumtaz's interview until the time of

their response brief filing, "far exceeds established timelines." [19] at 11.  Typically, visa

applications are processed in the order they are received, called a first-in, first-out method. *See*

*Zadeh*, 2024 WL 2274266, at *10.  First-in, first out is "widely held to be an acceptable rule of

reason." *Lubega*, 2024 WL 4206425, at *2 (*citing Aljabari v. Mayorakas*, 2022 WL 2073047 (N.D. Ill. Jun. 9, 2022) (collecting cases)).

In an unreasonable delay case, plaintiffs must allege that the government does not apply a rule of reason, such as the first-in, first-out method to administrative processing. *See, e.g.*, *Patel*, 2025 WL 1039505, at *7 (asserting the government reviewed the visa application randomly based on case details). In contrast, in *Zadeh*, the plaintiffs did "not allege that the State Department sat on its hands and refused to review… [the] visa application, while allowing other couples to jump the line." 2024 WL 2274266, at *10. Because plaintiffs in *Zadeh* did not allege that the government did not apply a rule of reason, the court held that the first factor favored the defendants. *Id*.

Here, Plaintiffs do not allege that the government failed to apply a rule of reason in adjudicating the visa application, unlike the plaintiff in *Patel* – only that the delay from the September 2023 interview until now is too long. Like the plaintiff in *Zadeh*, Plaintiffs do not allege that Defendants failed to follow a first-in, first-out method or that Defendants chose to not act on the application. Thus, the first factor favors Defendants.

### ii. Factor Two

Factor two considers "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *TRAC*, 750 F.2d at 80. Where Congress provided no statutory scheme or timetable for administrative processing, "courts typically look to case law for guidance." *Ebrahimi*, 732 F. Supp. 3d at 911 (*quoting Brzezinski v. U.S. Dep't of Homeland Sec.*, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021)). Courts rarely, if ever, find that delays fewer than two years are unreasonable. *Id*; *see also Salem*, 2025 WL 1567864, at *8 (two years was insufficient to state a claim for unreasonable delay); *Patel*, 2025 WL 1039505, at *8 (a 15-month

delay favored defendants); *Zadeh*, 2024 WL 2274266, at *10 ("[A] delay of little over a year is insufficient, by a wide margin."). For a successful unreasonable delay claim, courts "have generally found that immigration delays in excess" of five years are unreasonable, "while those between three [and] five years are often not unreasonable." *Orozco v. Blinken*, 2023 WL 4595377, at *4 (N.D. Ill. July 18, 2023). Here, fourteen months passed between Mr. Mumtaz's September 2023 interview and the filing of the complaint. Since that date, an additional eight months have passed. Thus, it has been a total of twenty-two months. This is not unreasonable as it is still less than two years, so this factor favors Defendants. *See Calderon-Ramirez*, 877 F.3d at 275–76 (backlog of applications shows year-and-a-half wait is not unreasonable); *see also Brzezinski*, 2021 WL 4191958, at *5 (surveying case law, finding "no case that found an unreasonable delay when the delay was under two years[,]" "a plethora of cases finding delays longer than two years to not be unreasonable[,]" and concluding 17-month delay not unreasonable).

   **iii. Factor Three**

   The third factor asks courts to consider that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. Courts are less likely to find delays impacting "purely economic interests" unreasonable than those that impact health and welfare. *Ebrahimi*, 732 F. Supp. 3d at 912. In *Lubega*, since the plaintiffs did not allege any threat to the health and safety of the applicant, the court noted that the delay did not impact health and welfare in a "particularly serious manner." 2024 WL 4206425, at *2; *compare with*, *Jama*, 2025 WL 346811, at **10–11 (finding factor three favored the plaintiff because the separation exacerbated the applicant's depression and her hypothyroidism condition).

The Seventh Circuit found that applicants must differentiate the impact on their health and welfare from other similarly situated applicants for an unreasonable delay claim. *See Calderon-Ramirez,* 877 F.3d at 275–76. In *Ebrahimi*, the Iranian applicant worried about their access to healthcare in their home country, but that was "a problem for all Iranians," so the court did not find unreasonable delay with regards to that factor. 732 F. Supp. 3d at 912. At most, the third factor usually only slightly favors plaintiffs where plaintiffs suffer issues common to visa applicants. *Zadeh*, 2024 WL 2274266, at **10–11. In *Patel*, the plaintiff allegedly suffered emotional difficulties due to living separately from her spouse, which "impacted their employment and relationship with family and friends" and delayed their plans for having children. 2025 WL 1039505, at *3. The plaintiff alleged incurring financial costs from traveling and maintaining two separate households. *Id*. at *8. The court held that the factor only slightly favored unreasonable delay because visa applicants often suffer these problems. *Id*.

In this case, Plaintiffs allege that Ms. Arif experienced emotional distress due to her husband's prolonged absence. Mr. Arif is unable to proceed with his planned business venture without his father, who would provide financial assistance. The delay also hinders the family's "ability to alleviate financial hardship." [1] at 4. But Plaintiffs do not allege any threats to Mr. Mumtaz's safety while he resides in Canada, like in *Lubega*. The Complaint merely alleges experiencing emotional distress but does not allege facts about what that emotional distress entails, unlike the plaintiff in *Patel*. The Court is sympathetic to the financial challenges Plaintiffs face without Mr. Mumtaz, but they do not rise to a level of serious harm to health and welfare. This factor favors Defendants.

###### iv.    Factor Four

The fourth factor considers agencies' finite resources and time when processing applications.  Where there is a lack of differentiation between Mr. Mumtaz's application and others, this factor is more likely to favor the government. *See Calderon-Ramirez,* 877 F.3d at 275. Agencies have a long line of applicants, and expediting Mr. Mumtaz's application would effectively move his application ahead of others who applied before him. *See Lubega*, 2024 WL 4206425, at *2; *Ebrahimi*, 732 F. Supp. 3d at 913.  Plaintiffs have not pled any facts as to how processing Mr. Mumtaz's application would not impact the agency's ability to process other applications.  The fourth factor favors Defendants.

###### v.    Factor Five

The fifth factor, "the nature and extent of the interests prejudiced by delay," overlaps with the third factor.  *Lubega*, 2024 WL 4206425, at *3.  Where plaintiffs do not allege facts that suggest the delay would cause extreme prejudice, then courts are less likely to find unreasonable delay. *Salem*, 2025 WL 1567864, at *8.  As noted in the factor three analysis, Plaintiffs allege that Mr. Arif needs his father for financial assistance and to help with his business venture, while Ms. Arif faces emotional challenges.  But the harms faced by Plaintiffs do not rise to a level of extreme prejudice: visa applicants and their families often face financial difficulties, and the harm to Plaintiffs is not unlike those other visa applicants.  Similarly, the "strains of separation of married couples" in these situations is a common experience in these types of visa applications. *See Patel*, 2025 WL 1039505, at *8.  Plaintiffs do not offer facts that suggest the delay in their application is significantly more harmful to their financial and emotional interests than to other applicants.  This factor favors Defendants.

> ### vi. Factor Six

The sixth factor clarifies that a court does not need an allegation of bad faith to find unreasonable delay. *See Patel*, 2025 WL 1039505, at *9; *Ebrahimi*, 732 F. Supp. 3d at 913. When a plaintiff does not allege impropriety on the part of the government, this factor is neutral. *See Patel*, 2025 WL 1039505, at *9; *Zadeh*, 2024 WL 2274266, at *11. Here, Plaintiffs do not allege that the consular officers or the State Department acted in bad faith, so this factor is neutral.

Weighing all the factors together, the Court does not find that the current delay is unreasonable. Thus, the APA claim is dismissed. The Court certainly encourages the United States Consulate of Montreal and the Secretary of State to give Plaintiffs a decision and provide them with closure with regards to Mr. Mumtaz's application. The Court is also sympathetic to the plight of this family in having to wait for a final adjudication. However, in reviewing the allegations of the Complaint, the Court does not have a basis to compel the government to expedite the application.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss [15][16] is granted.

**SO ORDERED.**

Dated: July 7, 2025

Sunil R. Harjani
United States District Judge